IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| MARIANNE ALLENSPACH-BOLLER, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> UNITED COMMUNITY BANK, *et al.,* ) <br> ) <br> Defendants. ) <br> ) | Case No. 5:19-CV-06073-DGK |

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM; DENYING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This lawsuit arises from Plaintiffs Eric Allenspach and Marianne Allenspach-Boller's allegations that Defendant United Community Bank ("UCB"), and its employees, Defendants Marla Kephart and Janet Foster (the "Individual Defendants"), failed to perform the necessary underwriting requirements for an SBA loan and to timely report fraud once it was uncovered, despite assuring Plaintiffs it would do so.

Now before the Court are Defendants' Motions to Dismiss for Failure to State a Claim (Docs. 5, 7, 9), and the Individual Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (Docs. 7, 9).[1]  For the reasons below, the motions to dismiss for failure to state a claim are denied in part and granted in part, and the motions to dismiss for lack of personal jurisdiction are denied.  Plaintiff shall have twenty-one days to file an amended complaint.

**Background**

Plaintiffs, who are citizens of Missouri, own Reliable Machine & Engineering, Inc.

---

[1] Although each defendant filed a separate motion to dismiss, they consist of the same legal arguments.  Thus, in the interest of concision, the Court considers all three motions in the same order.

("Reliable"), which is also a named Plaintiff in this case. Reliable is incorporated in Missouri and has its principal place of business in Polo, Missouri. Defendant UCB is a state-chartered Georgia bank registered with and regulated by the Georgia Department of Banking and Finance. Its home office is in Blairsville, Georgia. Defendant Foster is a citizen of Louisiana, and Defendant Kephart is a citizen of North Carolina. Plaintiffs filed this lawsuit in the Circuit Court of Caldwell County, Missouri, and Defendants removed the case to federal court by invoking the Court's diversity jurisdiction.

The Petition contains eleven claims. Counts I, II, and III assert claims of fraudulent and negligent misrepresentation, as well as negligence. These counts arise from UCB's failure to comply with SBA underwriting guidelines after informing Plaintiffs that it would do so. All other counts stem from Defendant's failure to report a non-party's fraud to the SBA after assuring Plaintiffs they would report it. Counts IV, V, VII, VIII allege all Defendants engaged in fraudulent and negligent misrepresentations, as well as negligence and breach of fiduciary duty. Counts VI, IX, and X, respectively, allege UCB negligently hired the Individual Defendants, breached the covenant of good faith and fair dealing, and negligently inflicted emotional distress upon Plaintiffs. Finally, Count XI seeks a declaratory judgment that Plaintiffs are released of their debt to UCB.

The Petition alleges that in mid-2015, after "purposeful and deliberate" due diligence, Plaintiffs decided to purchase Rood Machine & Engineering, Inc. ("Rood Machine") from Todd Rood. Pet. at ¶¶12-16. Plaintiffs went to UCB to obtain funds to purchase the business, and UCB informed Plaintiffs they would need a Small Business Administration ("SBA") loan. Plaintiffs then took out an SBA loan in the amount of $1,744,000.00 to fund the purchase of Rood Machine.

Although UCB had ensured Plaintiffs that it had appropriately underwritten[2] the SBA loan, Plaintiffs discovered after they took over the business that Rood had falsified financial records related to Rood Machine. Plaintiffs contacted Defendants about Rood's misrepresentations and received assurances from them that they would report his fraud to the SBA. Defendants, however, failed to report the misconduct. Because of their failure, "Rood's assets were not frozen and available for set-off of the Loan," so Plaintiffs "had to continue making payments on a debt that would have been satisfied." *Id*. at ¶40.

Rood later pled guilty to loan application fraud in federal court and was ordered to pay restitution to UCB in the amount of $1,085,608.49. Despite this judgment, Plaintiffs were required to continue making monthly payments on the loan. Because of Defendants' conduct, however, Plaintiffs' "ability to make monthly payments due under the terms of the Loan was advers[e]ly affected." *Id*. at ¶103. UCB therefore threatened foreclosure.

Plaintiffs claim Defendants' misconduct has cost them $1,200,000 plus interest, as well as $14,000,000 in lost profits.

## Discussion

**I.     Defendants' motion to dismiss is denied in part and granted in part.**

A complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

---

[2] The parties do not specify what the SBA guidelines for underwriting require and which of those requirements Defendants failed to perform.

### A. Missouri law applies to the tort claims, and a mix of Georgia and Missouri law apply to the contract claims.

Because the Court is hearing these claims pursuant to its diversity jurisdiction, Missouri choice-of-law rules apply to this case. *Stricker v. Union Planters Bank*, 436 F.3d 875, 877 (8th Cir. 2006). Thus, Plaintiffs' tort claims are subject to Missouri's "most significant relationship test," *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994), which "essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on the factors articulated in [Restatement (Second) of Conflict of Laws § 6]." *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008). Defendants do not dispute that any injury occurred in Missouri, so Missouri law governs Plaintiffs' tort claims.

Count IX, however, is a contract claim. Under Missouri law, a court must enforce a choice-of-law clause that specifically identifies the jurisdiction's law that governs. *Hope's Windows, Inc. v. McClain*, 394 S.W.3d 4778, 483 (Mo. Ct. App. 2013). The Loan Agreement provides that it is governed by Georgia law, while the related documents (Note, Deed of Trust, and Guarantees) explicitly state they are governed by Missouri law. Thus, the Court applies Missouri and Georgia law, where appropriate, in analyzing Count IX.

### B. Plaintiffs have not sufficiently pled fraud.

Counts I and IV allege two misstatements as actionable fraud: 1) that UCB would perform the appropriate underwriting and 2) that Defendants would report Rood's fraud to the SBA. Having examined the pleading requirements for fraud in conjunction with the elements of a claim for fraudulent misrepresentation in Missouri, the Court finds that Plaintiffs have failed to plead these fraud claims with sufficient particularity.

Rule 9(b) requires that "[i]n alleging fraud ... a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). To establish a claim of fraudulent misrepresentation, a plaintiff must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. 2010) (internal citations omitted). The plaintiff must "specify the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts. Required facts include the who, what, when, where and how surrounding the alleged fraud ... and what was obtained as a result." *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 804 (8th Cir. 2017) (citations and quotations omitted).

In Count I, the Complaint alleges that UCB falsely claimed that "it would perform the scrutiny that is required by the SBA" but failed to do so. Compl. at ¶ 44. At no point does the Complaint specifically identify who made the first alleged misrepresentation, much less how or when it was made. These vague references fall short of Rule 9(b)'s pleading requirements. *Owen Cont'l Dev., LLC v. Vill. Green Mgmt. Co.*, No. 4:11-CV-1195-FRB, 2011 WL 5330412, at *5 (E.D. Mo. Nov. 4, 2011) ("Generally, the statements alleged to be fraudulent must be linked to an individual speaker. Vague references to 'defendant' as the speaker . . . are insufficient.").

Count IV, which arises from Defendants' second alleged misrepresentation that they would report Rood's fraud to the SBA, also fails to meet Rule 9(b)'s heightened pleading

5

requirements. For example, Plaintiffs' Complaint implies that the Individual Defendants made the second alleged misrepresentations by stating "Defendants made false representations to Plaintiffs regarding reporting to the SBA." Compl. at ¶¶ 63. The Complaint, however, never specifically identifies that it was Kephart and Foster who made the misrepresentations. The Complaint also provides a three-month time period in which the misrepresentations could have been made, does not specifically allege by what means the representations were transmitted, and fails to allege when Defendants had knowledge that any misrepresentations was false. These allegations are insufficient to satisfy Rule 9(b). *See Owen*, 2011 WL 5330412, at *5; *Renaissance Leasing, LLC*, 322 S.W.3d at 133 ("When a fraud claim is based on a statement of intent, the plaintiff establishes falsity by showing that when the statement was made, the speaker did not intend to perform consistently with the statement.").

Plaintiffs contend the Court should give them the benefit of all reasonable inferences, but the reasonable inferences that can be drawn here are insufficient to meet Rule 9(b)'s heightened pleading standard. Thus, Counts I and IV are dismissed without prejudice.

    **C.**    **Plaintiffs have failed to state negligent liability claims in Counts II and III but have sufficiently stated claims in Counts V, VII, VIII, and X.**

To establish liability for any negligence-based claims, Plaintiffs must show: "(1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure." *Vickers v. Progressive Cas. Ins. Co.*, 979 S.W.2d 200, 203–04 (Mo. Ct. App. 1998) (citation omitted). Similarly, "[t]o prevail on a breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary duty; (2) a breach of that fiduciary duty; (3) causation; and (4) harm." *Robert T. McLean Irrevocable Trust u/a/d March 31, 1999 ex rel. McLean v. Ponder*, 418 S.W.3d 482, 490 (Mo. Ct. App. 2013).

6

Defendants claim that Plaintiffs have failed to state claims of negligent misrepresentation, negligence, breach of fiduciary duty, and negligent infliction of emotional distress because Defendants did not have a duty to Plaintiffs and, alternatively, any misconduct by Defendants did not cause Plaintiffs' harm—Rood's fraud did.

Under Missouri law, a lender does not generally have a duty to a borrower unless special circumstances exist. *See Caranchini v. Bank of Am., N.A.,* No. 10-CV-672-DGK, 2013 WL 5407206, at *4 (W.D. Mo. Sept. 26, 2013) *aff'd sub nom. Caranchini v. Bank of Am. Nat. Ass'n*, 566 F. App'x 549 (8th Cir. 2014) (explaining that a "lender and a borrower ordinarily have a non-fiduciary, arm's-length relationship that does not give rise to a duty that support a negligence claim"). A duty may arise if a confidential relationship exists where one person relies upon and trusts the other with the management of his property or business affairs. *Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 737, 741 (Mo. Ct. App. 2002). Put simply, without something more than the typical lender-borrower relationship, there is no duty—fiduciary or otherwise.

Here, Plaintiffs have failed to allege something more in Counts II and III. Plaintiffs had already decided to purchase Rood Machine when they went to UCB to obtain additional funds to purchase the business. UCB's assurance that it would comply with SBA underwriting requirements occurred in the context of lending, and Plaintiffs have identified no authority providing that there is a duty under Missouri law to process loan applications competently. Because Plaintiffs have alleged no facts which took their relationship outside of the traditional lender-borrower relationship, Counts II and III are dismissed without prejudice.

Plaintiffs have, however, sufficiently alleged something more in Counts V, VII, and VIII. After Plaintiffs put Defendants on notice of Rood's fraud, Defendants assured them that they had the requisite experience and expertise in dealing with SBA loans and would report Rood's fraud

7

to the SBA. They failed to do so. Because of their statements, Defendants knew, or should have known, that Plaintiffs were placing their trust in Defendants and were relying on them to inform the SBA of Rood's fraud. Assuming, without deciding, that Missouri courts would recognize a duty under these circumstances, Plaintiffs have sufficiently pled facts to support such a claim.

Defendants' argument that Rood's conduct, not theirs, caused Plaintiffs harm in Counts V, VII, and VIII is unavailing. Plaintiffs specifically plead that "[b]ecause UCB failed to report the Fraud to the SBA, Rood's assets were not frozen and available for set-off of the Loan," which in turn caused them to continue making payments on the debt that otherwise would have been satisfied with Rood's assets. Compl. at ¶ 40.

The Individual Plaintiffs' claim of negligent infliction of emotional distress is also viable since they have additionally alleged that 1) Defendants should have known their conduct would cause a risk of distress and 2) the Individual Plaintiffs' distress is medically diagnosable. *See Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. App. 2001) (holding these additional elements are required to state a claim of negligent infliction of emotional distress). However, Plaintiffs concede that a business entity is incapable of proving a medically-diagnosable injury, so Reliable Machine's claim of emotional distress in Count X is dismissed with prejudice.

D.     **Plaintiffs have not stated a claim of negligent hiring.**

Defendant UCB further alleges that Plaintiffs fail to state a claim of negligent hiring/retention because they have not pled that UCB had knowledge of the Individual Defendants' dangerous proclivities prior the alleged misrepresentations. "To establish a claim for negligent hiring or retention, a plaintiff must show: (1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the

proximate cause of the plaintiff's injuries." *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. 1997). An employer's knowledge of the employee's dangerous proclivities is based upon "prior acts of misconduct." *Reed v. Kelly*, 37 S.W.3d 274, 277 (Mo. Ct. App. 2000).

Plaintiffs have alleged no facts inferring that UCB was aware of the Individual Defendants' dangerous proclivities before committing the alleged misrepresentations here. Assuring bank customers of their experience on its own is not a dangerous proclivity, and Plaintiffs identify no prior instances in which the Individual Defendants assured bank customers that they had the requisite experience but then failed to fulfill their obligations. That the Individual Defendants allegedly failed to do so on this occasion does not suffice, since a negligent hiring claim is not derivative of the employee's alleged negligence. *McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995). Count VI is dismissed without prejudice.

**E.     Plaintiffs have failed to state a claim of breach of good faith and fair dealing.**

The Complaint asserts that pursuant to the Loan Agreement "and related documents" Defendants had a duty to take reasonable actions to protect Plaintiffs from damages arising from the alleged misrepresentations but failed to do so. Compl. at ¶¶ 97, 98.

Under Georgia law, which governs the Loan Agreement, a breach of the implied covenant of good faith and fair dealing cannot provide an independent basis for liability and must be asserted in conjunction with a breach of contract claim. *See McGee v. Patterson*, 323 Ga. App. 103, 112 (2013). Plaintiffs have asserted no breach of contract claim. Thus, to the extent Plaintiffs rely on the Loan Agreement to support their claim of breach of the implied covenant of good faith and fair dealing, it must fail.

Moreover, even though under Missouri law all contracts have an implied covenant of good faith and fair dealing, Plaintiffs' Complaint does not identify any term of the Note, Deed of

Trust, or Guarantee that UCB allegedly breached. *See Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012) ("A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies . . . the expected benefit of the agreement."). Thus, Count IX is dismissed without prejudice.

      **F.**      **Plaintiffs have adequately alleged a declaratory judgment action.**

Since this matter is being heard in federal court, the federal procedural rules apply to this case. *Hanna v. Plumer*, 380 U.S. 460 (1965). Thus, the Court is governed by the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, which provides that "any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

Here, Plaintiffs allege that "the Restitution Award in favor of UCB which was contained in the Criminal Judgment is of an amount sufficient to pay off the balance" of Plaintiffs' loan. Compl. at ¶ 108. Thus, they claim that their obligations under the Loan Agreement should be deemed satisfied and UCB should not be allowed to proceed to foreclosure. The Court finds these allegations are sufficient to survive a motion to dismiss, since there is a plausible question of the restitution judgment's legal effect on Plaintiffs' debt. Indeed, if Plaintiffs' allegations are true, UCB is gaining a windfall by receiving both Rood's restitution as well as Plaintiffs' collateral.

**II.**      **The Individual Defendants' motions to dismiss for lack of personal jurisdiction are denied.**

The Individual Defendants also contend the Court lacks personal jurisdiction over them. Personal jurisdiction concerns "whether the controversy or the defendant has sufficient contracts, ties, or relationships with the forum to give the court the right to exercise judicial power over the

defendant . . . ." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004).

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead sufficient facts to support a reasonable inference that the defendant is subject to jurisdiction within the state. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). Once a motion to dismiss for lack of personal jurisdiction has been filed, the parties may submit evidence, such as affidavits, to bolster their positions. *Id.* The plaintiff bears the burden of proof and must make a prima facie showing that personal jurisdiction exists. *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). Where, as here, the case is at the motion to dismiss stage, the court may not dismiss for lack of personal jurisdiction if the evidence, viewed in the light most favorable to the plaintiff, supports a conclusion that the exercise over the defendant is proper. *Id.*

Personal jurisdiction can be specific or general. *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). Plaintiffs allege the Court possesses specific jurisdiction over the Individual Defendants. Personal jurisdiction exists only to the extent permitted by the forum state's "long-arm statute" and the Due Process Clause of the Fourteenth Amendment. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012); *see* Fed. R. Civ. P. 4(k)(1)(A). The Individual Defendants argue that Missouri's Long-Arm Statue is not satisfied and that they lack sufficient minimum contacts with Missouri to satisfy due process concerns. The Court finds no merit to either argument.

Missouri's Long-Arm Statute provides for personal jurisdiction over any person who transacts a tort within Missouri.[3] Mo. Rev. Stat. § 506.500.1(3). The Missouri Supreme Court

---

[3] Missouri's Long-Arm Statute also authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause. The Eighth Circuit, however, has cautioned against collapsing these two

11

has held that Missouri's Long-Arm Statute covers a tort committed in another state that yields consequences in Missouri. *Bryant*, 310 S.W.3d at 232 (holding that the statue reaches an out-of-state-resident who defrauds a Missouri resident by sending false statements into Missouri). As discussed in Section I. C., the Complaint sufficiently alleges the Individual Defendants committed tortious acts by sending false misrepresentations into the state, which yielded consequences in Missouri. This satisfies Missouri's Long-Arm Statute.

Because the Long-Arm Statute is satisfied, the Court must determine whether the exercise of personal jurisdiction over the Individual Defendants offends due process. Due process concerns are satisfied if: (1) the Individual Defendants had certain minimum contacts with the forum state; and (2) the assertion of personal jurisdiction is reasonable under the circumstances of the particular case (a "reasonableness" inquiry). *Viasystems*, 646 F.3d at 594.

"Minimum contacts" exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). To establish the requisite minimum contacts for specific jurisdiction, the plaintiff must show that the defendant has "purposely directed its conduct into the forum state," and the cause of action relates to those activities. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1786 (2017) (quotation and citation omitted). To determine this, courts in the Eighth Circuit use a five factor test which considers: "(1) the nature and quality of the defendant's contacts with the

---

inquiries into one because the Missouri Supreme Court analyzes these questions separately. *See Viasystems*, 646 F.3d at 593 n.2 (quoting *Bryant v. Smith Interior Design Grp.*, 310 S.W.3d 227, 231 (Mo. 2010)). Subsequent Eighth Circuit decisions, though, have considered only whether the assertion of personal jurisdiction violates due process. *See*, *e.g.*, *Aly v. Hanzada for Import & Export Co., LTD*, 864 F.3d 844, 849 (8th Cir. 2017) ("[B]ecause the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," a federal court need only consider "whether the assertion of personal jurisdiction would violate" due process.) (quoting *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015)). Out of an abundance of caution, the Court conducts both inquiries here.

forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interests of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). The last two factors carry less weight in the analysis. *Id*.

Applied here, the first, third, and fourth factors weigh in favor of establishing minimum contacts, while the second and fifth factors are inconclusive.

The nature and quality of the Individual Defendants' contacts with Missouri includes sending the allegedly false statements into the state through email exchanges and telephone calls. Allenspach-Boller Aff. at ¶10-11 (Doc. 17). The affidavits, viewed most favorably to Plaintiffs, show that the Individual Defendants both talked with Plaintiffs who were in Missouri regarding the loan, which they knew would be used to fund a Missouri business. In her affidavit, Kephart acknowledges that she communicated with Plaintiffs by "facsimile, electronic mail, or traditional correspondence" and that she traveled to Missouri "in connection with the Reliable Machine loan." Kephart Aff. at ¶ 6 (Doc. 8-1). Though Foster never physically traveled to Missouri, she also admits to communicating with Plaintiffs, located in Missouri, by "telephone, facsimile, electronic mail, or traditional correspondence" regarding the loan. Foster Aff. at ¶ 5. Emails between the parties show that the Individual Defendants reached out to Plaintiffs in Missouri by phone and email regarding the loan. Allenspach-Boller Aff. at Ex. A. In one exchange, for example, Foster wrote: "It was good to hear your voice today. As I mentioned, [Kephart] and I are providing the bank's attorney with a summary of what has transpired early next week. As soon as he is able to review and provide us with a response we will be back in touch with you. Thank you." Allenspach-Boller Aff. at Ex. A.

During these various communications, Plaintiffs allege the Individual Defendants made false representations by assuring Plaintiffs they would report Rood's fraud to the SBA. Allenspach-Boller Aff. at ¶ 11. By making these allegedly false statements, the Individual Defendants should have realized that because the Individual Plaintiffs and their business are in Missouri, the brunt of the harm would be felt in Missouri. Thus, they should have reasonably anticipated being haled into court here. *See Oriental Trading Co. v. Firetti*, 236 F.3d 938, 941-43 (8th Cir. 2001) (holding making telephone calls and sending faxes into the forum state to convince the plaintiff to provide funds satisfies the minimum contacts requirement); *Bryant*, 310 S.W.3d at 234 ("Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.") (citation and quotations omitted).

Although it is unclear from the record how many communications the Individual Defendants made to Plaintiffs in Missouri, they are certainly numerous. Allenspach-Boller Aff. at Ex. A. More importantly, though, there is a direct relationship between the Individual Defendants' contacts and the causes of action against them here. Indeed, Plaintiffs' case will likely succeed or fail based on what the Individual Defendants represented to them during these communications.

Additionally, Missouri has a clear interest in providing a forum for Plaintiffs. The convenience of the parties' factor is neutral; although this forum is obviously convenient for Plaintiffs, it is inconvenient for the Individual Defendants, who are out-of-state citizens. Overall, these factors indicate that minimum contacts exist.

Since minimum contacts exist, the Court must consider whether exercising personal jurisdiction over the Individual Defendants is reasonable. The Court finds that it is because

numerous state and federal courts have found in similar cases that the court's exercise of personal jurisdiction over the defendant was fair. *See, e.g., Firetti*, 236 F.3d at 943 (holding that basing personal jurisdiction on the fact that the defendant made telephone calls and sent faxes into the forum state did not offend traditional notions of fair play and substantial justice); *Bryant*, 310 S.W.3d at 236 (holding the exercise of personal jurisdiction over an out-of-state defendant who sends misleading documents into the state to defraud a Missouri resident is fair). Thus, this Court possesses personal jurisdiction over the Individual Defendants.

## Conclusion

For the reasons discussed above, Defendants' motions to dismiss (Docs. 5, 7, 9) are granted in part and denied in part. Counts I, II, III, IV, VI, and IX are dismissed without prejudice, and Count X against Reliable Machine is dismissed with prejudice. Plaintiffs shall have twenty-one days to file an amended complaint.

The Court holds it has personal jurisdiction over the Individual Defendants. Their motions to dismiss for lack of personal jurisdiction (Docs. 7, 9) are DENIED.

**IT IS SO ORDERED.**

Date: October 21, 2019 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT