UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MARIANNE ALLENSPACH-BOLLER, ERIC J. ALLENSPACH, and RELIABLE MACHINE & ENGINEERING, INC., | ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) ) ) | |
| v. | ) ) | Case No. 5:19-cv-06073-DGK |
| UNITED COMMUNITY BANK, | ) ) | |
| Defendants/Counterclaim Plaintiff, | ) ) ) | |
| and | ) ) | |
| JANET FOSTER and MARLA KEPHART, | ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

This lawsuit arises from Plaintiffs Reliable Machine & Engineering, Inc. ("Reliable Machine"), Eric Allenspach, and Marianne Allenspach-Boller's allegations that Defendant United Community Bank ("UCB") and its employees, Defendants Marla Kephart and Janet Foster ("Individual Defendants"), failed to perform the necessary underwriting requirements for a Small Business Administration ("SBA") loan and to timely report fraud once it was uncovered, despite assuring Plaintiffs it would do so. UCB brings various counterclaims seeking the balance due on the loan.

Now before the Court are Defendants' Motions for Judgment on the Pleadings (Docs. 89, 91) and related briefing (Docs. 90, 92, 102, 117). Finding Plaintiffs waived their claims against Defendants by signing written claims waivers when they subsequently modified the loan, the Court GRANTS Defendants' motion IN PART.

1

**Background**

### I. Factual Background

The Court considers the following facts in the light most favorable to the plaintiffs. On December 31, 2015, United Community Bank loaned Reliable Machine $1,744,000 in an SBA loan to purchase Rood Machine & Engineering, Inc. ("Rood Machine"), a machine shop and warehouse located in Polo, Missouri. Plaintiffs Eric Allenspach and Marianne Allenspach-Boller, the owners and officers[1] of Reliable Machine, personally guaranteed the loan. The loan was also secured by a security interest in certain real estate owned by the individual Plaintiffs and by the real estate included in the purchase of Rood Machine. Plaintiffs then transferred the proceeds from the loan to Todd Rood, the owner of Rood Machine. However, less than a month after the transaction closed, Plaintiffs discovered that Todd Rood had defrauded them with inaccurate and incomplete financial information.

From January through March of 2016, Plaintiffs communicated with UCB regarding the fraud. They requested UCB report Rood's fraud to the Small Business Association in order to freeze Rood's assets (including the proceeds from the sale of Rood Machine to Plaintiffs). During this same period, UCB represented to Plaintiffs that it would report the fraud to the SBA. However, UCB never reported the fraud to the SBA, and as a result Rood's assets were never frozen. On December 6, 2017, Rood pled guilty to federal charges of providing false information in connection with an SBA loan. As part of the judgment in the criminal case, the court ordered Rood to pay restitution of $1,085,608.49 to UCB, which Rood has paid.[2]

---

[1] Eric Allenspach serves as President and Marianne Allenspach-Boller serves as Secretary of Reliable Machine.

[2] UCB claims only a fraction of this amount has been paid. For purposes of resolving the pending motion, the Court accepts Plaintiffs' claim that the entire amount has been paid.

**II.     Claim Waivers[3]**

On July 5, 2016, months after Plaintiffs became aware of the fraud, Plaintiffs entered into a "Change in Terms Agreement" with UCB[4] ("2016 Agreement").  The 2016 Agreement includes the following language which UCB alleges operates as a claim waiver:

> Borrower waives and releases Lender from any and all claims which Borrower may have against Lender, its agents and assigns, with respect to the Existing Indebtedness, the note, and the other loan documents executed in connection therewith, whether such claims are known or unknown, or arise under contract or in tort.

(Doc. 50-1 p. 2).  The 2016 Agreement also states "prior to signing this agreement, Borrower read and understood all of the provisions of this agreement.  Borrower agrees to the terms of this agreement."  *Id.*  An attached addendum to the 2016 Agreement states:

> Borrower confirms, reaffirms and ratifies Borrower's respective obligations contained in the Note and the Loan Documents and represents that Borrower has no claims, defenses, counterclaims or rights of setoff or recoupment against Lender under the Note or the Loan Documents or otherwise and hereby waive any such claims, defenses, counterclaims or rights of setoff or recoupment.

(Doc. 50-1 p. 2).  Plaintiff Eric Allenspach signed the Change in Terms Agreement as President of Reliable Machine.  The 2016 Agreement also incorporates an attached "Consent to Change in Terms Agreement."  As guarantors of the loan, Eric Allenspach and Marianne Allenspach-Boller each signed this consent three times.  The consent states:

> To induce Lender to enter into this Modification, each Guarantor . . . waives and releases and forever discharges Lender and its officers, directors, attorneys, agents, and employees from any liability, damage, claim, loss or expense of any kind that it may have against Lender of any kind. Guarantor further agrees to indemnify and hold Lender and its officers, directors, attorneys, agents and employees harmless from any loss, damage, judgment, liability or expense (including attorneys' fees) suffered by or rendered against Lender or any of them on account of any claims arising out of or

---

[3] Though Plaintiffs did not mention the claim waivers in their complaint, the Court may consider them in deciding this motion to dismiss.  *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

[4] The Change in Terms Agreement released certain real property as collateral and substituted real property located in Plattsburg, Missouri.

3

> relating to the obligations of Guarantor . . . to Lender. Each Guarantor . . . further states that it has carefully read the foregoing release and indemnity, knows the contents thereof and grants the same as its own free act and deed.

(Doc. 50-1 p. 5).

Nearly nine months later, on March 23, 2017, Plaintiffs and Defendant UCB entered into a "Modification of Promissory Note" ("March 2017 Modification"). Under this modification, UCB agreed that Reliable Machine would make no payments on the note for three months. In exchange, Plaintiffs agreed that:

> Each of Borrower and the undersigned guarantor(s) . . . hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges the Lender and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions predecessors, directors, officers, attorneys, employees, agents and other representatives (the Lender and all such other Persons being hereinafter referred to as the "Releasees," and individually as a "Releasee"), of and from any and all demands, actions, causes of action, suits, controversies, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set off, demands and liabilities whatsoever . . . of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which such Loan Party or any of its successors, assigns or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for upon or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the date that this Modification is executed by all parties, in each case solely for or on account of or relating to the Note, any of the other loan, collateral, guaranty or other agreements, instruments or documents relating thereto or the transactions thereunder or related thereto.

(Doc. 50-2 ¶ 7(a)). Eric Allenspach and Marianne Allenspach-Boller each signed this agreement in their capacities as officers of Reliable Machine and as guarantors.

On July 1, 2017, four days before payments on the note were scheduled to resume, Plaintiffs and Defendant UCB entered into another "Modification of Promissory Note" ("July 2017 Modification"). The second modification postponed payments on the note for an additional three months (until October 4, 2017), and contained the same claim waiver as the prior modification. Eric

4

Allenspach and Marianne Allenspach-Boller each signed the agreement in their capacities as officers of Reliable Machine and as guarantors (Doc. 50-3).

On September 10, 2018, Plaintiffs and Defendant UCB entered into a "Forbearance Agreement" ("2018 Forbearance"). The 2018 Forbearance noted that Rood's fraud induced Plaintiffs' decision to take out the loan. Under the agreement, UCB agreed to "forbear from any further action relating to the Loan Documents" for six months so that Plaintiffs, Defendant UCB, and the SBA could work together to submit an Offer in Compromise to the SBA to in order to write down the principal balance on the loan (Doc. 50-4 ¶ G). The 2018 Forbearance defines "Obligors" as Plaintiffs, "Lender" as Defendant UCB, "Seller" as Todd Rood, and the "Agreement" as the 2018 Forbearance (Doc. 50-4 p. 2). In Paragraph 5(b), the 2018 Forbearance states:

> 5.(b). <u>Waiver.</u> It is the express intention and agreement of the Parties hereto that neither the modification of the Loan Documents nor any other documents executed in connection with the Loan, or any change to the terms thereof as provided herein, if any, is intended nor shall be construed as an extinguishment, revocation, satisfaction or discharge of any of the liabilities or obligations therefor. The execution of this Agreement by the Lender shall not be deemed to be a waiver of its rights under any Loan Documents or any other agreement, note . . . or other document on the part of the Lender in exercising any right nor shall it operate as a waiver of such right or any other rights. . . As additional consideration Obligors and Lender agree that nothing in this Agreement constitutes a waiver of any claims or defenses arising from or related to the fraudulent acts of Seller.

(Doc. 50-4¶ 5(b)). Paragraph 10 of the 2018 Forbearance includes a waiver of claims arising from the 2018 Forbearance:

> 10. <u>Release.</u> Expressly contingent and conditioned upon, and in consideration for, the Obligors' receipt of the Forbearance Period . . . Obligors . . . do hereby release, remise, quitclaim and forever discharge Lender and its affiliates, along with their . . . agents, employees . . . from any and all claims . . . whether arising at law, in equity, by statute, regulation or otherwise, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or potential, that the Releasors or any of them, have or may have against the Releasees . . . *relating to this agreement, except as may arise pursuant to the enforcement of this Agreement*; however, said release is

5

> limited to the extent it is impacted by the change of circumstances created by Seller's fraud and it is expressly understood and agreed that new defenses may now exist because of the fraud occurring and ongoing at the time of the execution of the Loan Documents and said release shall not apply to any defenses arising from or related to the fraudulent acts taken by Seller.

(Doc. 50-4 ¶ 10) (emphasis added). Marianne Allenspach-Boller signed in her capacity as an officer of Reliable Machine and as a guarantor, while Eric Allenspach signed as guarantor.

## Procedural History

In 2019, Plaintiffs filed suit against UCB and Defendants Foster and Kephart ("individual defendants"), employees of UCB. The Amended Complaint (Doc. 41) asserts eight counts. Counts One and Two claim UCB fraudulently and negligently misrepresented that it would scrutinize Rood Machine's financials prior to approving the loan. Count Three alleges UCB negligently failed to comply with SBA underwriting guidelines. Count Four alleges UCB and the individual defendants negligently misrepresented that they would report Rood's fraud to the SBA. Count Five alleges UCB and the individual defendants were negligent in failing to report the fraud to the SBA. Count Six alleges UCB and the individual defendants breached a fiduciary duty to Plaintiffs by failing to report Rood's fraud to the SBA. Count Seven alleges negligent infliction of emotional distress against UCB. Count Eight seeks a declaratory judgment against UCB, arguing the restitution award contained in Rood's criminal judgment satisfies plaintiffs' balance on their loan from UCB, thereby releasing Plaintiffs from any liability under the note.

Defendants UCB and the individual defendants subsequently brought this motion to dismiss, arguing that Plaintiffs waived their claims. The Court stayed this case pending its ruling on the motion.

## Standard

After the pleadings have closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). In ruling on a motion for judgment on the pleadings, the court must "accept as true all

6

Case 5:19-cv-06073-DGK   Document 133   Filed 11/16/20   Page 6 of 12

factual allegations set out in the complaint and construe the complaint in the light most favorable to the plaintiff, drawing all inferences in [her] favor." *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (internal quotation marks and citation omitted).

A motion under 12(c) that challenges the sufficiency of the pleadings requires the Court to apply the 12(b)(6) standards. *Ashley Cnty., Ark.*, 552 F.3d at 665. To survive a 12(b)(6) motion to dismiss, the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Rather, it must include "enough facts to state a claim to relief that is plausible on its face*.*" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff must provide the grounds of his entitlement with more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 (internal citations omitted)). Much like the court's review under Rule 12(b)(6), "[j]udgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Ashley Cnty., Ark..*, 552 F.3d at 665 (internal quotation marks and citation omitted).

To decide a 12(c) motion "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks and citations omitted). Matters necessarily embraced by the pleadings include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (*quoting Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). In cases involving contracts,

7

these materials include the contract documents regardless of whether the plaintiff attached these documents to the complaint. *Id*. at 526–27.

## Discussion

Defendants argue Plaintiffs waived all their claims by signing the claim waivers in the various loan modification documents. Plaintiffs respond they have not waived their claims because they alleged they signed the waivers under duress. Plaintiffs also argue that the 2018 Forbearance revived claims which had been waived in the three prior waivers. Finally, Plaintiffs argue that their claim for declaratory judgment either falls beyond the scope of the waivers or that public policy concerns require the Court to hold the claim waivers unenforceable as to the declaratory judgment claim. The Court addresses each of these claims below.

### I. The Court ignores the Amended Complaint's legal conclusion that Plaintiffs signed the claim waivers under duress.

Plaintiffs argue judgment on the pleadings is inappropriate because Plaintiffs' pleadings allege they signed the claim waivers under duress. Plaintiffs argue that, since the Court must accept all factual allegations by the non-moving party as true, the Court cannot determine whether Defendants are entitled to judgment as a matter of law on the basis of the claim waivers. Plaintiffs argue the motion for judgment on the pleadings should be denied, or in the alternative, the Court should convert the motion to a motion for summary judgment. *See* Fed. R. Civ. P. 12 (d). In either scenario, the stay would be lifted, allowing Plaintiffs to conduct discovery regarding whether they signed the claim waivers under duress.

The Court disagrees. In deciding a motion for judgment on the pleadings, the Court must accept all factual allegations as true. *Ashley Cnty., Ark.*, 552 F.3d at 665. However, it may set aside any unsupported legal conclusions. *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017); *Foster Cable Servs., Inc. v. Deville*, 368 F. Supp. 3d 1265, 1270 (W.D. Ark. 2019) (citing

8

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (ruling on a 12 (b) (6) motion)).

Plaintiffs have alleged no facts indicating they signed the claim waivers under duress. Plaintiffs did not even mention the existence of the claim waivers in their Amended Complaint, let alone make any factual allegations which, if taken as true, could indicate duress. Plaintiffs only state, in an affirmative defense to Defendant's counterclaims:

> 5. Any amendments to the terms of the Loan Documents were the result of duress and/or undue influence on the part of UCB. Moreover, any jury or claim waiver is void and of no effect because UCB has unclean hands, breached its obligations of good faith and fair dealing, and because the agreements containing amendments were rescinded and/or repudiated.

(Doc. 60 p. 10). This is an unsupported legal conclusion, and the Court sets it aside for purposes of deciding this motion.

## II. Plaintiffs waived their claims in Counts One through Seven.

Plaintiffs do not dispute that the 2016 Agreement, the March 2017 Modification, and the July 2017 Modification each contain language which unambiguously waives Counts One through Seven. However, Plaintiffs argue that language in the 2018 Forbearance operates to "carve out" their claims from the prior waivers. The 2018 Forbearance does not carve out these claims from the prior waivers, and the Court therefore holds Plaintiff waived Counts One through Seven.

Missouri law governs the interpretation of the 2018 Forbearance. "In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." *Stricker v. Union Planters Bank, N.A.*, 436 F.3d 875, 877 (8th Cir. 2006). Under Missouri choice-of-law rules, choice of law provisions within a contract govern a court's interpretation thereof. *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. 2012). The 2018 Forbearance includes a choice of law provision granting the holder of the agreement—which is UCB—the option to apply either the law of Georgia or "the law of the state or states where the collateral is located"

(Doc. 50-4 ¶ 14(e)).  The collateral includes real property located in Missouri, and UCB elects Missouri law to govern the interpretation of the 2018 Forbearance.

The 2018 Forbearance does not affect the claim waivers in the three prior agreements.  "[T]he primary rule of contract interpretation is that courts seek to determine the parties' intent and give effect to it."  *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226–27 (Mo. 2013) (citations omitted).  "The parties' intent is presumed to be expressed by the plain and ordinary meaning of the language of the contract." *Id.*  "When the language of a contract is clear and unambiguous, the intent of the parties will be gathered from the contract alone." *Id.*  The 2018 Forbearance unambiguously states that it does not affect Defendants' rights under the 2016 Agreement, the March 2017 Modification, or the July 2017 Modification:

> 5.(b).  <u>Waiver.</u> . . .  The execution of [the 2018 Forbearance] by the Lender shall not be deemed to be a waiver of its rights under any Loan Documents or any other agreement, note . . . or other document on the part of the Lender in exercising any right nor shall it operate as a waiver of such right or any other rights.

(Doc. 50-4 ¶ 5(b)).  Paragraph 5(b) concludes: "As additional consideration Obligors and Lender agree that nothing in [the 2018 Forbearance] constitutes a waiver of any claims or defenses arising from or related to the fraudulent acts of Seller."

Plaintiffs argue the final sentence of Paragraph 5(b) operates to exempt Plaintiffs' claims from the prior claim waivers because Plaintiffs' claims arise from and are related to Rood's fraudulent acts.  However, the sentence makes no mention of the claim waivers contained in the prior agreements, much less state that the claim waivers are no longer valid.  Plaintiffs' interpretation of the last sentence does not work because it would introduce a contradiction into Paragraph 5(b).  Under Plaintiffs' reading, the paragraph would state in one sentence that the 2018 Forbearance does not constitute a waiver of Defendants' rights—including the claim waivers in the prior agreements—and state in another that the claim waivers in the prior agreements are no longer effective.  The Court cannot read

10

the contract this way. *See Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 280 (Mo. 2019) ("[C]ourts give the words of the contract their 'natural, ordinary, and common sense meaning.'") (quoting *Wilshire Const. Co. v. Union Elec. Co.*, 463 S.W.2d 903, 906 (Mo. 1971)). Paragraph 5(b) does not modify the claim waivers contained in the three prior agreements.

Plaintiffs also argue that the 2018 Forbearance carves out their claims because the release included in paragraph 10 does not apply to "any defenses arising from or related to the fraudulent acts taken by [Rood]" (Doc. 50-4 ¶ 10). However, this release only applies to claims which arise from the 2018 Forbearance. *Id.* ("Obligors . . . do hereby release Lender and its affiliates, along with their . . . agents, employees . . . from any and all claims . . . relating to *this agreement*, except as may arise pursuant to the enforcement of this Agreement.") (emphasis added). Paragraph 10 does not modify the claim waivers contained in the three prior agreements.

Plaintiffs waived the claims in Counts One through Seven.

### III. The Court takes Defendants' Motion under Advisement regarding Count Eight.

Finally, Plaintiffs argue they did not waive Count Eight, the declaratory judgment claim. Plaintiffs allege "upon information and belief, the Restitution Award in favor of UCB which was contained in the Criminal Judgment [against Todd Rood] is of an amount sufficient to pay off the balance of the Loan" and seek a declaratory judgment deeming their debt to UCB satisfied on this basis (Doc. 41 p. 15).[5] Plaintiffs' appear to argue that the declaratory judgment claim is beyond the scope of the claim waivers and that the claim cannot be waived as a matter of public policy.

Whether or not Plaintiffs are correct, the Court would still have to resolve the underlying

---

[5] The Court accepts the allegation for the purpose of a judgment on the pleadings. However, the Court also notes that UCB alleges Todd Rood has paid only a fraction of what he owes. The Court wishes to remind Plaintiffs' Counsel that Rule 11 requires factual contentions in pleadings either have evidentiary support or, if made upon information and belief, be likely to have evidentiary support "after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11.

11

issue here at some point, namely, whether UCB can receive what would arguably be a double recovery if Todd Rood paid any restitution and the Court entered a judgment requiring Plaintiffs to pay the entire amount of the loan without regard to any restitution UCB received from him. Accordingly, the Court will take Defendants' motion under advisement with regards to Count Eight.[6] The stay in this case is lifted, and Plaintiff may engage in very limited discovery for the sole purpose of determining what restitution, if any, Todd Rood has paid to UCB, nothing else.[7]

**Conclusion**

Defendants' motion is GRANTED IN PART. Because Plaintiffs waived the claims brought in Counts One through Seven, the Court enters judgment in Defendants' favor on Plaintiffs' Counts One through Seven. The motion for judgment on the pleadings is taken under advisement with respect to Plaintiffs' Count Eight. Additionally, the Court lifts the stay it previously imposed. Plaintiff may engage in the limited discovery discussed above.[8]

The parties shall confer on a revised scheduling order and submit a proposed revised scheduling order on or before November 30, 2020.

**IT IS SO ORDERED.**

Date: <u>November 16, 2020</u>  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT

---

[6] Plaintiffs brought Count Eight as a declaratory judgment claim, seeking the Court declare the note fully satisfied. Discovery will be useful for determining how much of Plaintiffs' debt to UCB has arguably been repaid by Todd Rood's restitution payments.

[7] The Court suspects this discovery can be completed via an interrogatory and a request for production of documents.

[8] Defendants may engage in discovery necessary to support their counterclaims, subject to the limitations in the Federal Rules of Civil Procedure, the Local Rules, and the Court's Scheduling and Trial Order.

12