# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| MARIANNE ALLENSPACH-BOLLER, et al., )<br>)<br>Plaintiffs/Counter-Defendants, )<br>)<br>v. )<br>)<br>UNITED COMMUNITY BANK, )<br>)<br>Defendant/Counter-Plaintiff. ) | No. 5:19-CV-06073-DGK |

## ORDER GRANTING IN PART MOTION FOR WRIT OF ATTACHMENT

This lawsuit arises from Plaintiffs' purchase of the assets and real property of a machine-shop business ("Rood Machine") from third-party Todd Rood ("Rood"). Plaintiffs Reliable Machine & Engineering, Inc. ("Reliable Machine") and its owners/corporate officers Eric Allenspach and Marianne Allenspach-Boller[1] funded the purchase via a Small Business Administration ("SBA") loan from Defendant United Community Bank ("UCB"). After the deal closed, Plaintiffs learned that Rood had criminally defrauded Plaintiffs and UCB by providing inaccurate and incomplete financial information about the business. Rood subsequently pled guilty to providing false information in connection with an SBA loan.

Plaintiffs then filed this suit against UCB and two of its employees, alleging defendants failed to perform the necessary underwriting requirements for an SBA loan and to timely report the fraud. UCB responded by filing counterclaims seeking the balance due on the loan.

Now before the Court is UCB's motion for writ of attachment and related relief. ECF No. 136. UCB seeks to attach $2.5 million of a $6 million insurance settlement to ensure Plaintiffs

---

[1] In this order, the Court refers to all three plaintiffs collectively as "Plaintiffs." Where the Court refers only to Eric Allenspach and Marianne Allenspach-Boller collectively, it refers to them as "the Allenspachs."

pay any judgment entered against them on UCB's counterclaims. UCB also requests the Court: (1) compel Plaintiffs to respond to UCB's discovery requests to determine the location of the settlement funds; and (2) enter a preliminary injunction enjoining Plaintiffs from transferring any of the settlement funds. *Id.* Plaintiffs oppose the motion.

For the reasons discussed below, the motion is GRANTED IN PART. The writ of attachment is granted with respect to $1.4 million only; the request to compel and the request for a preliminary injunction are denied.

## Standard for Prejudgment Attachment

Federal Rule of Civil Procedure 64 authorizes the Court to impose any remedy available under Missouri law which provides for the seizure of property to secure satisfaction of a potential judgment. Missouri law allows a claimant to obtain a writ of attachment under two conditions. The claimant must: (1) file a sufficient bond in accord with Rule 85.08, and (2) file an affidavit in support of the motion in accord with Rule 85.03. Mo. Sup. Ct. R. 85.02, 85.03, 85.04. The Court has little discretion: "If the court finds that the facts stated in the affidavit show that the writ of attachment should issue," then the court "shall" issue the writ. Mo. Sup. Ct. R. 85.04.

With respect to the bond, Rule 85.08 requires a "sufficient bond, approved by the court, executed by the claimant as principal and one or more sufficient sureties to the effect that they are bound to the State of Missouri in an amount set by the court but not exceeding double the amount claimed." Mo. Sup. Ct. R. 85.08(a). As conditions of the bond, the claimant must state that it shall:

> (1) Prosecute all claims without delay and with effect; (2) Refund all sums of money that may be adjudged to be refunded to the owner of the property or found to have been received by the claimant and not justly due; (3) Pay all damages and costs that may accrue to the owner of the property, any garnishee or interpleader by reason of the attachment, or any process or proceeding in the action, or by reason of any judgment or process thereon; and (4) Pay all damages and costs that may

2

accrue to any sheriff or other officer by reason of acting under the writ of attachment following the instructions of the claimant.

Mo. Sup. Ct. R. 85.08(b).

Rule 85.03 requires the affidavit state "the nature and amount of the claim" and "facts showing the existence of one or more of the grounds for attachment set forth in [Mo. Rev. Stat. § 521.010]." Mo. Sup. Ct. R. 85.03. The Court may only consider facts stated in the affidavit when deciding whether to grant a motion for writ of attachment. *See* Mo. Sup. Ct. R. 85.04; *Lubrication Eng'rs, Inc. v. Parkinson*, 341 S.W.2d 876, 878 (Mo. App. 1961) ("[S]ince attachment proceedings were unknown at common law and are creatures of the statutes, our courts have pointed out many times that strict compliance with applicable statutory requirements is essential to the acquisition of jurisdiction over the res.").

Finally, the Court notes that "[t]he attachment does not create the right to a judgment or debt; rather, it provides a means of enforcing a judgment." *State ex rel. Union Elec. Co. v. Barnes*, 893 S.W.2d 804, 805 (Mo. 1995) (en banc). If an owner of attached property believes the attachment is improper, the owner may move to dissolve the attachment. Mo. Sup. Ct. R. 85.13.

**Background**

As part of Rood's sentence in the criminal case, the Court ordered Rood to pay $1,085,608.49 in restitution to UCB. J. and Comm. at 5, *USA v. Rood*, No. 4:17-cr-00365-GAF (W.D. Mo. March 3, 2018), ECF No. 38. Plaintiffs then brought a civil suit in Missouri state court against Rood, Rood Machine, and other individuals[2] involved in selling the Rood Machine assets and real property. Pet., ECF No. 137-13; *Allenspach-Boller v. Rood*, No. 17CL-CV00304-01

---

[2] Plaintiffs also sued Rood's parents, Edwin and Sharon Rood; Rood's business broker, Jeremy Mays; his brokerage, J.P. Mays Business Brokers, LLC; Rood Machine's accounting firm, Cameron Accounting and Financial; two Cameron Accounting and Financial employees, James McKinley and Valerie Scroggins; the Allenspachs' due diligence adviser, Stan Buss; his company, Financial Cares, Inc.; and Sharla Johnston, a former Rood Machine employee. Pet., ECF No. 137-13; Settlement, ECF No. 137-3.

3

(Livingston Cnty. Cir. Ct. dismissed April 8, 2019). Rood's commercial lines insurer, acting on behalf of all defendants to the action, settled with Plaintiffs for $6 million. Settlement, ECF No. 137-3.

Then, on May 30, 2019, Plaintiffs filed this suit against UCB and two of its employees, Marla Kephart and Janet Foster. Plaintiffs alleged the defendants failed to perform the necessary underwriting requirements for an SBA loan and to timely report the fraud once it was uncovered. The Court granted UCB's motion for judgment on the pleadings as to seven of eight of Plaintiffs' claims.[3] ECF No. 133. UCB also filed counterclaims seeking the balance due on the note.[4] Countercl. 22–36, ECF No. 49.

Concerned that it may not be able to recover on a potential judgment, UCB has filled the pending motion. UCB submitted the affidavit of Beth Hallock, UCB's President of SBA Lending, in support of its application for writ of attachment ("UCB's affidavit"). Aff., ECF No. 137-4. Hallock made the affidavit on November 30, 2020. *Id.* UCB also submitted other documents which it argues show grounds for attachment under Mo. Rev. Stat. § 521.010. Because Missouri law allows the Court to consider only the affidavit in deciding whether the grant the writ of attachment, the Court has not considered these other documents in ruling on the pending motion.

The facts stated in the affidavit relevant to the "nature and amount" of UCB's counterclaims are as follows. UCB loaned Reliable Machine $1,744,000 on December 31, 2015 ("the Reliable Machine Loan"). Aff. ¶ 4. Marianne Allenspach-Boller and Eric Allenspach, as co-owners, each personally guaranteed repayment. Aff. ¶ 4. As collateral on the loan, Reliable

---

[3] The remaining claim, for a declaratory judgment, is against UCB only. Marla Kephart and Janet Foster are no longer parties to this action.

[4] UCB's two remaining counterclaims are against Reliable Machine for breach of the note and against the Allenspachs for breach of their personal guarantees to repay the note. *See* Countercl. 27–29, 34–36, ECF No. 49. UCB moved to dismiss its other three counterclaims on March 29, 2021, and the Court granted the motion. ECF No. 172.

4

Machine pledged all of its assets, "wherever located, however arising or created," and regardless of whether Reliable Machine acquired the assets before or after it took out the Reliable Machine Loan. Aff. ¶ 6. The Reliable Machine Loan is now in default because Plaintiffs have not made the required payments of principal and interest, and as a result, "the debt has been accelerated and is fully due and payable" to UCB. Aff. ¶ 7. UCB now seeks to enforce the debt against Plaintiffs. Aff. ¶ 13.

As of November 30, 2020, $1,792,764.47,[5] including interest, was due on the Reliable Machine Loan, and interest on the loan continues to accrue at a rate of $195.78 per day. Aff. ¶ 11. In addition, UCB incurred $628,547.27 in legal fees through October 31, 2020.[6] Aff. ¶ 14. The total amount sought is $2,421,311.74 plus interest accrued after November 30, 2020.

The "facts showing the existence of one or more of the grounds for attachment" in the affidavit are as follows. Plaintiffs settled their claims against Todd Rood. Aff. ¶15, ECF No. 137-4. Under the settlement, Mrs. Allenspach-Boller and Reliable Machine received $6 million in January 2019, of which Reliable Machine recovered $1.7 million. Aff. ¶¶ 15, 17. The $1.7 million, as an asset of Reliable Machine, is collateral for the Reliable Machine Loan. Aff. ¶¶ 6, 11. The settlement agreement also states that the Reliable Machine Loan "will be satisfied and extinguished fully and completely, immediately [] before any portion of the Settlement Payment is disbursed to the Plaintiffs or their attorneys." Aff. ¶ 16 (quoting the settlement agreement).

---

[5] Hallock calculated the amount due based on UCB's accounting records. Aff. ¶ 9, ECF No. 137-4. The affidavit states that UCB applied reductions of $65,915.96, representing all restitution payments made by Todd Rood as a result of the $1,085,608.49 restitutionary judgment against him, and $286,184.52 representing "proceeds from the sale of pledged equipment that formerly belonged to Reliable Machine and were originally purchased with the proceeds of the [Reliable Machine] Loan." Aff. ¶ 12.

[6] UCB's counterclaims request an award of attorney's fees. Countercl. 29, 35, ECF No. 49.

5

Shortly after receiving the $1.7 million recovery in January 2019, Reliable transferred $1.4 million to Mrs. Allenspach-Boller. Aff. ¶ 17. Plaintiffs allegedly did this to prevent United from receiving the funds. Aff. ¶ 17.

"[UCB's] records do not show that Reliable Machine, through the Allenspachs or otherwise, made [UCB] aware of the settlement prior to discovery in the lawsuit they filed against [UCB]." Aff. ¶ 18. "[UCB] learned of the settlement in approximately late July 2020, over a year after the settlement had occurred." Aff. ¶ 18. UCB deposed Mrs. Allenspach-Boller several weeks after learning of the settlement. Aff. ¶ 19. In the deposition, Mrs. Allenspach-Boller stated that the $1.4 million transfer "was a 'loan' that had no terms," and she did not reveal where the settlement funds were located. Aff. ¶ 19.

UCB's accounting records reflect that Plaintiffs have not made a payment on the loan since they received the settlement. Aff. ¶ 16, 18.

## Discussion

As an initial matter, the Court finds UCB has posted a $2.5 million bond which meets all the conditions listed in Rule 85.08. Bond, ECF No. 137-16. $2.5 million is equal to the amount UCB seeks to attach and approximate to the amount UCB claims it is due, and the Court therefore approves the bond.

Turning to the affidavits, the Court concludes that UCB's affidavit sufficiently states the nature of UCB's claims against Reliable Machine for breach of the note and against the Allenspachs for breach of personal guarantees and sufficiently states the amount sought by these claims. For the reasons stated below, however, the affidavit states facts supporting attachment of $1.4 million only.

6

**I.      The affidavit states facts supporting attachment of $1.4 million from the settlement.**

UCB argues that grounds for attachment exist under Mo. Rev. Stat. § 521.010 (7). Section 521.010 (7) allows for attachment "[w]here the [respondent] has fraudulently conveyed or assigned his property or effects, so as to hinder or delay his creditors," and the transfer actually hinders or delays a creditor's collection of the debt. Mo. Rev. Stat. § 521.010 (7); *Douglass v. Cissna*, 17 Mo. App. 44, 54, 57 (1885). UCB argues that the $1.4 million transfer is a fraudulent transfer as defined by the Missouri Uniform Fraudulent Transfer Act ("MUFTA"), Mo. Rev. Stat. § 428.024.[7] Suggests. 14–15, ECF No. 137. A fraudulent transfer, as defined by the MUFTA, which hinders or delays a creditor's collection of a debt, serves as grounds for attachment under Mo. Rev. Stat. § 521.010 (7). *See* Mo Rev. Stat. § 428.039 (granting a creditor the right to obtain an "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable laws of this state").

**A.      The affidavit states facts showing Plaintiffs fraudulently transferred $1.4 million.**

Under § 428.024, a transfer made by a debtor is fraudulent if the debtor makes the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Mo Rev. Stat. § 428.024.1 (1). The statute lists eleven indicia of intent to hinder, delay, or defraud, three of which are found here:

(1) The transfer or obligation was to an insider;
. . .
(3) The transfer or obligation was disclosed or concealed;
. . .
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

---

[7] UCB also argues this was a fraudulent transfer under *Shelley v. Boothe*, 73 Mo. 74 (1880). Suggests. 15–18, ECF No. 137. This argument relies on Mrs. Allenspach-Boller's deposition testimony, not the affidavit. The Court therefore does not consider it.

7

Mo. Rev. Stat. § 428.024.2.

The affidavit demonstrates these indicia of intent to hinder, delay, or defraud. First, Reliable Machine transferred the $1.4 million to Mrs. Allenspach-Boller, who is the co-owner of Reliable Machine and therefore an insider. *See* Mo. Rev. Stat. § 428.009(7) (defining an insider as a director, officer, or person in control of a debtor corporation). Second, the Allenspachs concealed the transfer from UCB. Despite agreeing to pay their debt to UCB in the settlement agreement with Rood's commercial insurer, the Allenspachs did not tell UCB that they had received the settlement or transferred a portion of it from Reliable. Instead, Reliable Machine told UCB about the settlement only when forced to do so pursuant to discovery in this case. When deposed, Mrs. Allenspach-Boller did not reveal where the settlement funds were located. Third, Reliable received nothing of equivalent value in exchange for the $1.4 million transfer, as Mrs. Allenspach-Boller testified that the transfer was a loan with no terms. UCB's affidavit therefore states facts showing that Plaintiffs fraudulently transferred $1.4 million from Reliable Machine to Mrs. Allenspach-Boller.

Plaintiffs multiple arguments as to why UCB has not sufficiently shown intent are unavailing. First, they argue that UCB is required to prove by clear and convincing evidence that Plaintiffs intended to hinder, delay, or defraud UCB from collecting on its debt. Opp'n. 14, ECF No. 142. But the clear and convincing standard only applies where a party seeks a final judgment for fraudulent transfer claims brought under the MUFTA. *See Higgins v. Ferrari*, 474 S.W.3d 630, 636 (Mo. Ct. App. 2015). Here UCB is seeking prejudgment attachment on its counterclaims, and therefore need only state "facts showing the existence of one or more of the grounds for attachment set forth in Section 521.010 (7)." Mo. Sup. Ct. R. 85.03. *See also* Mo. Rev. Stat. §

428.039 (allowing attachment "in accordance with the procedure prescribed by applicable laws of this state").

Next, Plaintiffs argue they did not transfer the funds to prevent UCB from collecting on the loan, but rather to "salvage" Reliable Machine, as it was "a failing enterprise." Opp'n. 14, ECF No. 142. This explanation is not credible. Depriving a failing business of $1.4 million in cash is not an effective means of salvaging a business.

Plaintiffs also argue that the affidavit does not sufficiently show intent because Mrs. Allenspach-Boller personally guaranteed the Reliable Machine Loan. Plaintiffs argue that, if they had intended to hinder, delay, or defraud UCB, they would have transferred the funds to an individual who is not personally liable on the note. Pl.'s Br. 12, ECF No. 142. This is not persuasive. As of November 30, 2020, Plaintiffs had not told UCB where the settlement funds are located, and UCB had not received any payment on the debt. If Plaintiffs did not intend to hinder, delay, or defraud, they would have told UCB where these funds are located, made a payment on the debt, or placed the funds in escrow so they would be available to the UCB in the event it prevails on its counterclaim.

### B. The Affidavit states facts showing the transfer hindered UCB's collection on the Reliable Machine Loan.

UCB's affidavit states that the Allenspachs transferred the funds after receiving the settlement and did not tell UCB about the settlement until they were forced to do so pursuant to discovery in this case. As a result, UCB did not know about the settlement until over a year after Plaintiffs made the transfer. Additionally, as of the date of the affidavit, Plaintiffs have not made any payments on the loan since receiving the settlement. UCB's affidavit therefore shows that the transfer hindered UCB's collection of the debt. Attachment of the $1.4 million is appropriate under Rule 85 and Mo. Rev. Stat. § 521.010 (7).

## II. UCB's affidavit does not state facts supporting additional attachment.

UCB seeks to attach an additional $1.1 million from Plaintiffs' settlement with Rood's commercial insurer. But UCB's affidavit states no facts supporting any other grounds for attachment under Mo. Rev. Stat. § 521.010, and its motion only argues for attachment on the basis of the $1.4 million transfer.[8] The Court therefore cannot attach any more than the $1.4 million transferred from Reliable Machine to Mrs. Allenspach-Boller.

## III. Plaintiffs' arguments that attachment is not necessary are not considered.

Finally, Plaintiffs argue that attachment is not necessary because: (1) UCB "has essentially been made whole" by the restitutionary judgment against Todd Rood; and (2) the Reliable Machine Loan is secured by real and personal property which could be used to satisfy a judgment against Plaintiffs. These arguments address the necessity of attachment, not the adequacy of the affidavit. Such arguments are properly considered only in the context of a motion for dissolution of attachment, if at all. See Mo. Ct. R. 85.04 ("If the court finds that the facts stated in the affidavit show that the writ of attachment should issue, the writ shall be issued upon compliance with Rule 85.08.") (emphasis added). The Court therefore declines to address them here.

## IV. UCB's remaining requests are denied.

UCB's motion to compel is denied with prejudice. UCB did not comply with Local Rule 37.1, and the deadline for making a new discovery motion which complies with Local Rule 37.1 has passed. *See* Sched. Or., ECF No. 138.

UCB's motion for a preliminary injunction is also denied with prejudice. UCB states no facts to support a preliminary injunction preventing transfer of any settlement funds not attached

---

[8] UCB's motion makes much of the Allenspachs' status as dual citizens of Switzerland and the United States. Suggestions in Supp. 9, 17, 19, ECF No. 137. Though § 521.010 allows for attachment where a respondent "is about to remove his property or effects out of this state, with the intent to defraud, hinder, or delay his creditors," or "is about to remove out of this state, with the intent to change his domicile," Mo. Rev. Stat. § 521.010 (5)–(6), the affidavit does not state any facts supporting attachment on this basis.

by this order.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) ("A [party] seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

## Conclusion

UCB's motion for writ of attachment against Plaintiffs is GRANTED AS TO $1.4 MILLION ONLY.  UCB's motion to compel is DENIED and its motion for a preliminary injunction is DENIED.

**IT IS SO ORDERED.**

Date:  May 3, 2021                                         /s/ Greg Kays
                                                          GREG KAYS, JUDGE
                                                          UNITED STATES DISTRICT COURT