IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| MARIANNE ALLENSPACH-BOLLER, et al., | ) ) ) |
| Plaintiffs/Counterclaim-Defendants, | ) ) |
| v. | ) )  No. 5:19-CV-06073-DGK |
| UNITED COMMUNITY BANK, | ) ) ) |
| Defendant/Counterclaim-Plaintiff. | ) |

**ORDER GRANTING DEFENDANT/COUNTERCLAIM-PLAINTIFF UNITED COMMUNITY BANK'S MOTION FOR SUMMARY JUDGMENT**

This lawsuit arises from Plaintiffs' purchase of a machine-shop business from third-party Todd Rood. Plaintiffs Reliable Machine & Engineering, Inc. ("Reliable Machine") and its owners/corporate officers Eric Allenspach, and Marianne Allenspach-Boller, borrowed money from Defendant/Counterclaim-Plaintiff United Community Bank ("UCB") to purchase the business via a Small Business Administration ("SBA") loan. The Court previously dismissed seven of Plaintiffs'[1] eight claims, ECF No. 133, and three of UCB's counterclaims, ECF No. 172.

Now before the Court is Defendant UCB's motion for summary judgment on its two remaining counterclaims and on Plaintiffs' remaining claim. ECF No. 152. For the reasons stated below, the motion is GRANTED.

**Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving parties, there is no genuine dispute as to any material fact, and the moving party is

---

[1] In this order, the Court refers to all three plaintiffs collectively as "Plaintiffs." Where the Court refers only to Eric Allenspach and Marianne Allenspach-Boller collectively, it refers to them as "the Allenspachs."

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving parties and draws all reasonable inferences in those parties' favor.  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986).  To survive a motion for summary judgment, the nonmoving parties must nonetheless substantiate their allegations "with sufficient probative evidence [that] would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy."  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations omitted).

## Undisputed Material Facts[2]

The Court considers the following facts in the light most favorable to Plaintiffs.  Reliable Machine is a Missouri corporation.  At the time Plaintiffs filed this lawsuit, Reliable Machine had a principal place of business in Polo, Missouri.  Eric Allenspach and Marianne Allenspach-Boller are the owners and officers of Reliable Machine.  Eric Allenspach serves as President, while Marianne Allenspach-Boller serves as Secretary of Reliable Machine.  At the time Plaintiffs filed this suit, the Allenspachs were citizens of Missouri.[3]  Defendant United Community Bank

---

[2] The Court excluded asserted facts properly controverted by the parties, immaterial facts, facts not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.  The Court included facts that were not genuinely disputed by any evidence under Federal Rule of Civil Procedure 56(c)(1).

[3] It is unclear whether Plaintiffs remain citizens of Missouri.  However, subject-matter jurisdiction based on diversity of citizenship depends on the "facts that existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541

2

("UCB"), a Georgia state-chartered bank with its home office in Blairsville, Georgia, is a citizen of Georgia.[4]

**UCB's Loan to Plaintiffs to Fund the Purchase of Rood Machine**

On October 5, 2015, the Allenspachs offered to purchase Rood Machine & Engineering ("Rood Machine"), a machine shop and warehouse in Polo, Missouri, from Todd Rood ("Rood"). Offer, ECF No. 153-8. The offer was contingent on the Allenspachs receiving a loan to finance their purchase. *Id.* at ¶ 7. Rood agreed to the sale.

Plaintiffs subsequently applied to UCB for an SBA Section 7a program loan, a type of loan made by a private bank in which a portion of the loan may be guaranteed by the SBA. UCB then applied to the SBA. On December 24, 2015, the SBA agreed to guarantee 75 percent of a $1,744,000 loan to Reliable Machine. Authorization, ECF No. 153-11. The SBA required Reliable Machine to pay $46,550 as a guarantee fee. Authorization ¶ A, ECF No. 153-11.

On December 31, 2015, UCB and Reliable Machine entered into an SBA Loan Agreement whereby UCB agreed to loan Reliable Machine $1,744,000 ("Loan"). SBA Loan Agreement, ECF No. 49-1. Contemporaneously with that agreement, Reliable Machine and UCB executed a promissory note ("Reliable Note"), which evidences Reliable Machine's obligation to repay the Loan. SBA Loan Agreement § 1.01, ECF No. 49-1; Note, ECF No. 49-2. Reliable Machine and UCB agreed to an adjustable-rate loan with an initial annual interest rate of 5.25 percent and a subsequent annual rate, adjusted quarterly, of two percent above the prime rate. Note ¶ 3, ECF No. 49-2. The parties agreed the note would mature in twenty-one years. *Id.* The SBA Loan

---

U.S. 567, 571 (2004). Because more than $75,000 was in issue, Plaintiffs were Missouri citizens when they filed this case, and complete diversity existed at the time of filing, the Court has jurisdiction over this dispute.

[4] 28 U.S.C. § 1332(c)(1); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) (holding that a state-chartered bank is a citizen of the state in which it is incorporated and also the state where it has its principle place of business).

Agreement and the SBA Loan Authorization govern the terms of the Reliable Note. SBA Loan Agreement ¶ 1.02, ECF No. 49-1 ("All other terms and conditions of the ["Reliable Note"] shall be in accordance with the SBA Loan Authorization and this Loan Agreement.").

As collateral for the Reliable Note, Reliable Machine granted UCB a security interest in real property and certain personal property included in the purchase of Rood Machine. Deed of Trust art. 2, ECF No. 49-3. Reliable Machine also granted UCB a security interest in the Allenspachs' Georgia residence.[5] SBA Loan Agreement § 7.09, ECF No. 49-1.

Also on December 31, 2015, the Allenspachs each personally and unconditionally guaranteed the loan. Marianne Allenspach-Boller Guarantee, ECF No. 49-4; Eric Allenspach Guarantee, ECF No. 49-5.

After the parties executed the Loan, the closing agent forwarded the SBA Loan Agreement, Reliable Note, personal guarantees, and Deed of Trust to UCB. UCB has maintained possession of these documents since January 6, 2016, and remains the holder of the Reliable Note.[6]

The Reliable Note allows UCB to incur reasonable attorney's fees and costs in order to collect amounts due under the Reliable Note, and to either "demand immediate repayment from [Reliable Machine] or add the expenses to the principal balance." Note at ¶ 6.B, ECF No. 49-2. Also, the personal guarantees each require the Allenspachs to "pay all expenses [UCB] incurs to enforce th[e] guarantee, including, but not limited to, attorney's fees and costs." Marianne Allenspach-Boller Guarantee at ¶ 9.A., ECF No. 49-4; Eric Allenspach Guarantee ¶ 9.A, ECF No. 49-5.

---

[5] The Allenspachs' moved from Georgia to Missouri to operate Reliable Machine. In connection with the Allenspachs' purchase of a Missouri residence, UCB released its security interest in the Allenspachs' Georgia residence and substituted a security interest in the Allenspachs' Missouri residence. Change in Terms Agreement, ECF No. 50-1 ("2016 Change in Terms Agreement"). In exchange, Plaintiffs waived all claims and defenses they may have had against UCB and its employees related to the Reliable Note. *Id.* at 3, 5.

[6] A promissory note holder is a person in possession of a note which is made payable to them. O.C.G.A. § 11-1-201.

4

The SBA Loan Agreement defines default as occurring "[i]f [Reliable Machine] shall fail to make payment when due of any installment of principal on the [Reliable Note] or interest accrued thereon which failure continues for a period of five (5) days following [Reliable Machine's] receipt of notice thereof." SBA Loan Agreement § 6.01, ECF No. 49-1. Likewise, the Reliable Note defines default as occurring if Reliable Machine should fail "to do anything required by [the Reliable Note] and other Loan Documents.[7]" Note ¶ 4, ECF No. 49-2. In the event of a default, the SBA Loan Agreement grants UCB the right to demand payment of all unpaid principal and interest. SBA Loan Agreement § 6, ECF No. 49-1. In addition, the Reliable Note grants UCB the right to collect from either Reliable Machine or any guarantor, file suit, and obtain judgment. Note ¶ 5, ECF No. 49-2.

**Todd Rood's Fraudulent Misrepresentation Regarding Rood Machine**

The Allenspachs began operating Reliable Machine in January 2016. Less than a month later, Plaintiffs discovered that Rood had produced false financial information. The following details of the fraud are drawn directly from Rood's resulting plea agreement:

> By altering his bookkeeping, Rood inflated his income by approximately $583,827 prior the sale. To do this he directed his bookkeeper in 2014 to classify two loans for $121,327 from CAN Capital as income and in 2015 to reclassify $120,000 in loans from his parents as income in 2014. Secondly, he created and directed the bookkeeper to record as income seven fictitious sales totaling $342,500 in 2015. In addition, he also fictionally reduced his liabilities by reclassifying the $120,000 parent loan and incorrectly classifying the CAN Capital loans as income and in a series of more complicated maneuvers reduced an old liability entitled "loan from shareholder" by $210,000 with the income from the fictitious sales.
>
> On December 17, 2015, Rood signed a certification that financial statements for August 31, September 30, and October 31 and his taxes for 2012, 2013 and 2014 are true and correct even though he knew the financial statements and tax returns

---

[7] The SBA Loan Agreement defines the Loan Documents as the "[Reliable Note], Security Agreement, mortgage and any other documents executed by Borrower in connection with the Loan." SBA Loan Agreement § 2.02, ECF No. 49-1.

5

Case 5:19-cv-06073-DGK   Document 196   Filed 10/27/21   Page 5 of 16

> falsely overstated [Rood Machine's] value. This certification, signed by Rood, was sent to the bank via email on December 22, 2015.

Plea Agreement ¶ 3, *U.S. v. Rood*, No. 4:17-cr-00365-GAF (W.D. Mo. filed Dec. 12, 2017), ECF No. 7. Rood made these misrepresentations knowingly and willfully "for the purpose of influencing the action of UCB to make a loan to [Plaintiffs]" and to induce Plaintiffs to purchase Rood Machine. *Id.* "But for Rood's false statements [UCB] would not have made the $1,744,000 loan to [Plaintiffs] because [Rood Machine's] value, including its business value and real estate, did not support that loan amount." *Id.*

Rood ultimately pled guilty to loan application fraud in violation of 18 U.S.C. § 1014. *Id.* As part of Rood's sentence, the Honorable Gary Fenner ordered Rood to pay restitution of $1,085,608.49 to UCB and $262,000 to the Allenspachs. J. and Comm. at 5, No. 4:17-cr-00365-GAF, ECF No. 38.

### The Loan Modifications

Reliable Machine lost all its working capital during the first four months of operation. As a result, the Allenspachs injected $305,000 of personal funds into Reliable Machine, cut their own salaries, reduced employee hours, and laid off employees. But Reliable Machine was still not profitable enough to make its payments on the Reliable Note. As such, Plaintiffs and UCB entered into a modification agreement on March 23, 2017. Modification of Promissory Note, ECF No. 50-2 ("March 2017 Modification Agreement"). Under this modification, UCB agreed that Reliable Machine would make no payments on the Reliable Note for three months. *Id.* ¶ 1 ("Borrower will make no payments for 3 months beginning April 5, 2017. All accrued interest shall be due and payable in full on July 4, 2017. Principal and Interest Payments will resume on July 5, 2017 with 234 monthly payments estimated at $12,576.48 . . . ."). Plaintiffs and UCB entered into another loan modification agreement on July 1, 2017. Modification of Promissory

6

Note, ECF No. 50-3 ("July 2017 Modification Agreement"). Under this modification, UCB agreed that Reliable would make no payments on the Reliable Note for another three months. *Id.* ¶ 1. ("Borrower will make no payments for 3 months beginning July 5, 2017. All accrued interest shall be due and payable in full on October 4, 2017. Principal and Interest payments will resume on October 5, 2017 with 230 monthly payments estimated at $12,771.82 . . . .").

In exchange for each modification, Plaintiffs unconditionally waived all claims against UCB related to the Reliable Note and all defenses to enforcement of the Reliable Note and personal guarantees. March 2017 Modification Agreement ¶ 7(a), ECF No. 50-2; July 2017 Modification Agreement ¶ 7(a), ECF No. 50-3. Eric Allenspach and Marianne Allenspach-Boller signed each modification agreement in their capacities as officers of Reliable Machine and as guarantors.

Plaintiffs also brought a civil suit against Rood in 2017. *Allenspach-Boller v. Rood*, No. 17CL-CV00304-01 (Livingston Cnty. Cir. Ct. dismissed April 8, 2019).

### The 2018 Forbearance Agreement

Plaintiffs and UCB then negotiated a forbearance agreement, signing a final version of the agreement on September 10, 2018. Forbearance Agreement, ECF No. 50-4 ("2018 Forbearance").

Under the 2018 Forbearance, UCB and Plaintiffs agreed that the sale of Rood Machine to Plaintiffs was "based upon fraudulent financial records" which Rood created. *Id.* ¶ F. UCB agreed to "forbear from any further action relating to the Loan Documents" for six months so that Plaintiffs and UCB could submit an Offer in Compromise to the SBA to in order to write down the principal balance on the loan. *Id.* ¶ G.

In exchange for the forbearance, Plaintiffs agreed to "ratify and reaffirm the Loan Documents, subject to all defenses arising from or related to the fraudulent acts taken by [Rood], Rood Machine and Engineering, Inc. and/or Todd Rood, individually." *Id.* ¶ H. *See also*

7

Forbearance Agreement ¶¶ 3, 5(a), 5(b), (7), ECF No. 50-4 (noting that Plaintiff's reaffirmation was "subject" to defenses arising from or related to Rood's fraudulent acts). Marianne Allenspach-Boller signed the 2018 Forbearance in her capacity as an officer of Reliable Machine and as a guarantor, while Eric Allenspach signed as guarantor.

### The Allenspachs Settle Their Suit against Rood

On December 8, 2019, Rood's commercial lines insurer, acting on Rood's behalf, settled with the Allenspachs for $6 million. Settlement Agreement, ECF No. 153-17. Under the terms of the settlement agreement, Plaintiffs were required to pay off the Reliable Note immediately. *Id.* ¶ 11(a).

### Plaintiffs File this Lawsuit against UCB and Reliable Machine Ceases Operations

On April 26, 2019, Plaintiffs filed this lawsuit in Caldwell County Circuit Court against UCB and two of its employees: Janet Foster and Marla Kephart ("Individual Defendants"). Compl., ECF No. 1-2. UCB and the Individual Defendants subsequently removed the case to this Court. ECF No. 1.

Plaintiffs' eight count complaint alleged that UCB fraudulently and negligently misrepresented that it would scrutinize Rood Machine's financials prior to approving the loan; that UCB negligently failed to comply with SBA underwriting guidelines; that UCB and the Individual Defendants negligently misrepresented that they would report Rood's fraud to the SBA; that UCB and the Individual Defendants were negligent in failing to report the fraud to the SBA; that UCB and the Individual Defendants breached a fiduciary duty to Plaintiffs by failing to report Rood's fraud to the SBA; and that UCB negligently inflicted emotional distress on the Allenspachs. Am. Compl., ECF No. 41. Plaintiffs also sought a declaratory judgment that any payment made by Rood to UCB pursuant to the restitution award should offset Plaintiffs' debt to

8

Case 5:19-cv-06073-DGK   Document 196   Filed 10/27/21   Page 8 of 16

UCB. *Id.* ¶¶ 91–96 (Plaintiffs' Count VIII); Suggestions in Opp'n at 34 n.3, ECF No. 181 (clarifying Plaintiffs' Count VIII).

The Court ordered this case to mediation before Magistrate Judge Lajuana M. Counts. Notice, ECF No. 3. The parties mediated the case on November 5, 2019, but they were unable to reach an agreement. Min. Entry, ECF No. 40. The Allenspachs then wound up Reliable Machine's operations. In December 2019, the Allenspachs sent UCB the keys to the Reliable Machine's physical shop. UCB accepted the collateral.

UCB counterclaimed on December 3, 2019, alleging that Reliable Machine had breached the Reliable Note by failing to pay interest and repay the principal (Count I), and that the Allenspachs had each breached their personal guarantees by failing to repay Reliable Machine's debt (Count V).[8] Answer and Countercls., ECF No. 49. UCB seeks to recover unpaid principal, accrued interest, late charges, and an "SBA Curtailment" charge on the Reliable Note, plus attorneys' fees and expenses.

Reliable Machine has not repaid the Reliable Note according to its terms and is currently in default. Countercl. Answer ¶ 17, ECF No. 61. As of February 22, 2021, Plaintiffs owed UCB $1,809,209.81, not including attorneys' fees and costs. Ex. J at 43, ECF No. 153-10. Rood has paid $65,915.96 in restitution to UCB and UCB received $286,184.52 by auctioning off equipment Plaintiffs originally purchased with proceeds from the Reliable Note. *Id.* at 7–8. UCB applied each of these amounts as reductions to Plaintiffs' balance. *Id.*

---

[8] UCB also brought counterclaims for Foreclosure (Count II), Replevin (Count III), and an accounting (Count IV). Answer and Countercls., ECF No. 49. UCB voluntarily dismissed these claims while this motion was pending. Order, ECF No. 172.

9

## Procedural History

UCB and the Individual Defendants subsequently moved for judgment on the pleadings. ECF No. 89, 91. The Court granted the motion in part, holding that Plaintiffs had waived seven of their eight counts under the broad claim waivers contained in the 2016 Change in Terms Agreement,[9] the March 2017 Modification, and the July 2017 Modification. Order, ECF No. 133. The Court took Defendants' motion under advisement in regards to Plaintiffs' claim seeking a declaratory judgment. *Id.* Because Plaintiffs' only surviving claim is against UCB only, the Individual Defendants are no longer parties to this action. *Id.*

## Discussion

UCB now moves for summary judgment on its counterclaims for breach of the Reliable Note and breach of the personal guarantees, and on Plaintiff's declaratory judgment claim. The motion is GRANTED.

### I. UCB is entitled to summary judgment on its claim against Reliable Machine for breach of the Reliable Note and against the Allenspachs for breach of their personal guarantees.

Plaintiffs do not contest that Reliable Machine is liable for breach of the Reliable Note and that the Allenspachs are liable for breach of their personal guarantees. Suggestions in Opp'n at 24, ECF No. 181. But they argue summary judgment is not appropriate because genuine issues of material fact exist regarding "whether Plaintiffs waived their defenses, whether UCB has failed to mitigate its damages, and the amount of UCB's damages." Suggestions in Opp'n at 24, ECF No. 181. On the issue of whether Plaintiffs "waived their defenses," Plaintiffs contend that there exist genuine disputes of material fact as to whether (1) the 2018 Forbearance agreement resurrected their previously waived defenses, and (2) whether their previous defense waivers are invalid due

---

[9] *See* supra note 7.

to economic duress. But in making these arguments, Plaintiffs never *specifically* identify *any* defense other than mitigation of damages that would be saved by the 2018 Forbearance or the invalidation of the prior waivers via duress. Indeed, throughout the rest of their brief, Plaintiffs argue only that UCB failed to mitigate its damages, that Plaintiffs have not waived mitigation of damages as a defense, and that UCB's calculation of how much it is due is wrong because Defendants failed to mitigate their damages.[10] While Plaintiffs asserted other defenses in their answer to UCB's counterclaims, ECF No. 61, they only specifically identify mitigation of damages in their suggestions in opposition.

It is not the Court's role to develop arguments for the parties. *See Fort Des Moines Church of Christ v. Jackson*, 215 F. Supp. 3d 776, 792 (S.D. Iowa) (collecting appellate cases). A nonmoving party seeking to establish an affirmative defense has the burden to come forward with facts and law demonstrating the existence of a dispute. *Auto-Chlor Sys. of Minnesota, Inc. v. JohnsonDiversey*, 328 F. Supp. 2d 980, 1020 (D. Minn. 2004) (quoting *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 600 (5th Cir.2001)). "The onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id.* (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995)); *see also Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 809 (8th Cir. 2007). Plaintiffs have abandoned their other defenses. The Court therefore need not wade into the arguments about the 2018 Forbearance or duress because, even assuming Plaintiffs were successful on these arguments, Plaintiffs' only available defense is mitigation of damages. This defense is not available under the applicable law.

---

[10] "The amount Plaintiffs owe UCB on the [Reliable Note] necessarily depends on resolving Plaintiffs' affirmative defenses and remaining claim." Suggestions in Opp'n ¶ 45, ECF No. 181.

11

**A. Georgia law governs the interpretation of the Reliable Note as well as the claims and defenses arising therefrom.**

UCB argues that Georgia law applies to the Reliable Notes and its derivative claims and defenses. Suggestions in Supp. at 28, ECF No. 153. Plaintiffs argue that while Georgia law may presumptively apply, it should be overridden by application of Missouri law for policy reasons. Suggestions in Opp'n at 31, ECF No. 181.

UCB has the better argument. "In a diversity action, a federal Court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." *Stricker v. Union Planters Bank, N.A.*, 436 F.3d 875, 877 (8th Cir. 2006). Under Missouri choice-of-law rules, choice-of-law provisions within a contract govern a court's interpretation thereof. *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. 2012). While the Reliable Note does not include a choice of law provision, the SBA Loan Agreement states that it is to be construed according to Georgia law. SBA Loan Agreement § 7.07, ECF No. 49-1. As a result, the Reliable Note is also governed according to Georgia law. SBA Loan Agreement ¶ 1.02, ECF No. 49-1 ("All other terms and conditions of the [Reliable Note] shall be in accordance with the SBA Loan Authorization and this Loan Agreement.").

Contrary to Plaintiffs' arguments, the Court sees no policy reason that would override this presumption. Plaintiffs argue that applying Georgia law would run afoul of Missouri's public policy exception to enforcement of contractual choice-of-law provisions. *See Sturgeon v. Allied Pros. Ins. Co.*, 344 S.W.3d 205, 210 (Mo. Ct. App. 2011) ("As long as the application of this law is not contrary to a fundamental policy of Missouri, we will honor the parties' choice of law provision."). Plaintiffs argue Missouri has a public policy of protecting its own citizens, which requires the Court to apply Missouri law rather than Georgia law. But this argument fails for

12

several reasons. First, it is unclear whether Plaintiffs would be able to assert mitigation of damages as a defense under Missouri law. *See Laclede Gas Co. v. Jastram*, 446 S.W.2d 633, 634 (Mo. App. 1969) (holding that a mitigation defense is not available where a defendant received a product or service in exchange for a promise to pay, and then used said product or service). Second, public policy exceptions to choice-of-law provisions must usually find support in statutory provisions, *Halpin v. Am. Fam. Mut. Ins. Co.*, 823, S.W.2d 479, 483 (Mo. 1992), and Plaintiffs point to no statute evidencing such a policy. Third, it is not clear whether Plaintiffs remain Missouri citizens: In response to a previous motion, UCB asserted that the Allenspachs moved to Switzerland in the Spring of 2021. Opp'n to Mot. to Extend Briefing Deadline at 2, ECF No. 171. Plaintiffs did not address this assertion in their reply. Reply, ECF No. 173. Finally, Plaintiffs' argument would mean that all choice-of-law provisions which prejudice a Missouri citizen are unenforceable. Such an exception would completely swallow the rule that choice-of-law provisions be given effect. Plaintiffs cite to no case where a court disregarded a choice-of-law provision merely because the applicable Missouri law was friendlier to the party with Missouri citizenship. This is likely because such a case does not exist.

The Court, thus, holds that Georgia law applies to the Reliable Note as well as the claims and defenses arising therefrom.

### B. Under Georgia law, UCB is entitled to summary judgment on its remaining claims against Plaintiffs.

A promissory note holder establishes a prima facie case to enforce a note by showing that the note was duly executed and is in default. *Miller v. Calhoun/Johnson Co.*, 230 Ga. App. 648, 650, 497 S.E.2d 397, 399 (Ga. Ct. App. 1998); O.C.G.A. § 11-3-308(a), (b). Likewise, a note holder establishes a prima facie right to judgment on a personal guarantee where guarantors have

unconditionally guaranteed a promissory note that is in default. *See Reece v. Chestatee State Bank*, 579 S.E.2d 11, 14 (Ga. Ct. App. 2003). Once the note holder establishes its right to judgment on a promissory note or personal guarantee, "the burden shifts to the debtor to establish an affirmative defense." *Burks v. Cmty Nat'l Bank*, 454 S.E.2d 144, 145 (Ga. Ct. App. 1995); *Reece*, 579 S.E.2d at 14 (quotation omitted); *see also* O.C.G.A. § 11-3-308(b). Plaintiffs admit that Reliable Machine is in default, and that UCB has made a prima facie showing that it is entitled to judgment on its claims for breach of note and breach of the personal guarantees.[11]

Plaintiffs argue, however, that UCB failed to mitigate its damages by 1) failing to notify Plaintiffs of a pending lawsuit against Rood which UCB discovered during the underwriting process, 2) failing to promptly notify the SBA when it learned of Rood's fraud in early 2016, 3) auctioning off Reliable Machine's property rather than selling the company as a going concern, and 4) failing to pursue a civil lawsuit against Rood until 2021.[12] Thus, Plaintiffs argue, the Court should reduce UCB's claimed damages of $1,809,209.81 plus attorney's fees.

These arguments, however, do not preclude the entry of summary judgment on UCB's remaining claims. Under Georgia law, a lender has no duty to mitigate damages where the notes and guarantees contain absolute promises to pay. *Branch Banking & Tr. Co. v. Lichty Bros. Constr.*, 488 F. App'x 430, 433 (11th Cir. 2012); *Big Sandy P'ship, LLC v. Branch Banking & Tr. Co.*, 723 S.E.2d 82, 84 (Ga. Ct. App. 2012). Because both the Reliable Note and the Allenspachs'

---

[11] Both modification agreements also contain covenants not to sue. March 2017 Modification Agreement ¶ 7(b), ECF No. 50-2; July 2017 Modification Agreement ¶ 7(b), ECF No. 50-3. UCB argues in the alternative that by bringing this suit, Reliable Machine breached the Reliable Note and the Allenspachs breached their personal guarantees. Suggestions in Supp. at 34–36, ECF No. 153. Because the Court holds that Reliable Machine breached the Reliable Note and the Allenspachs breached their personal guarantees by failing to make payments on the Reliable Note when due, the Court does not address this argument.

[12] Earlier in 2021, UCB filed a lawsuit seeking damages for breach of contract against Rood and Rood Machine, and for negligent misrepresentation against Rood, Rood Machine, and Rood's business broker and brokerage. Pet., ECF No. 181-5.

14

personal guarantees contain absolute promises to pay, UCB had no duty to mitigate its damages. UCB is entitled to judgment on its claim against Reliable for breach of the Reliable Note and against Eric Allenspach and Marianne Allenspach-Boller for breach of their personal guarantees.

**II.     UCB is entitled to summary judgment on Plaintiffs' claim seeking a declaratory judgment.**

UCB has also moved for summary judgment on Plaintiffs' only remaining claim: A claim seeking a judgment declaring that any future payment Rood makes to UCB pursuant to the restitutionary judgment should offset Plaintiffs' debt to UCB. Am. Compl. ¶¶ 91–96; Suggestions in Opp'n at 34 n.3, ECF No. 181 (clarifying Plaintiffs' Count VIII). Plaintiffs argue such a declaration is appropriate because, after a court sentences a criminal defendant to pay restitution, "any amount later recovered as compensatory damages" by a victim for the same loss as that caused by the criminal defendant serves to reduce the restitution the criminal defendant owes. 18 U.S.C. § 3664(j)(2). According to Plaintiffs, this means that Rood's restitutionary judgment will potentially be satisfied once Plaintiffs pay their debt to UCB. Plaintiffs argue this would be inequitable because Plaintiffs, like UCB, are victims of Rood's loan application fraud. Thus, Plaintiffs argue, payment of their debt to UCB will mean the fraud victim pays restitution owed by the fraudster.

Plaintiffs' claim lacks merit. The Declaratory Judgment Act merely allows a court to "declare the rights and legal relations of an interested party." 28 U.S.C. § 2201. It does not create a cause of action. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *Salau v. Denton*, 139 F. Supp. 3d 989, 1012 (W.D. Mo. 2015). An action for declaratory judgment must therefore state a "viable underlying cause of action." *Salau*, 139 F. Supp. 3d at 1012 (quotation omitted). Plaintiffs point to no underlying cause of action which would allow the Court to grant their requested relief.

Further, it is not inequitable for Plaintiffs' payment of their debt to UCB to satisfy Rood's restitutionary judgment. Section 3644(j)(2) prevents victims from obtaining a double recovery for their losses, and it prevents victims from having to pay a victim twice for the same loss. If Rood must still pay his restitution after the Allenspachs pay their debt to UCB, UCB would receive a windfall. In addition, Plaintiffs are not in a position to complain that they will be forced to pay Rood's restitution. Plaintiffs already agreed to use the proceeds from the settlement agreement to pay their debt to UCB. Had they done as they had promised, UCB's restitutionary judgment against Rood would potentially already be satisfied. Instead, it appears to the Court that the Allenspachs attempted to obtain a windfall by keeping the settlement proceeds for themselves. *See* Order Granting Mot. for Attachment, ECF No. 177.

UCB is entitled to judgment on Plaintiffs' claim seeking a declaratory judgment.

## Conclusion

UCB's motion for summary judgment is GRANTED. On or before December 1, UCB shall submit a final accounting showing the amount Plaintiffs owe under the Reliable Note and personal guarantees, along with a schedule of reasonable attorneys' fees. After UCB submits this documentation, Plaintiffs will have two weeks in which to object to UCB's calculations as to the amount of damages. Such response shall not attempt to relitigate this order. The Court will thereafter issue a final order stating the amount of damages to which UCB is entitled.

**IT IS SO ORDERED.**

Date: October 27, 2021        /s/ Greg Kays
                                                    GREG KAYS, JUDGE
                                                    UNITED STATES DISTRICT COURT